IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CAREY L. ROSS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:10-CV-401 (MTT) |
| | : | |
| KEVIN MCMICHAEL, et al., | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

## RECOMMENDATION

On October 22, 2010, Plaintiff Carey L. Ross filed the above-captioned action pursuant to 42 U.S.C. § 1983 alleging that Defendants Kevin McMichael, Russell White, Gillis Lowe, Carlos Rhodes, and Phillip Vinson applied excessive physical force against Plaintiff and denied Plaintiff medical care while Plaintiff was incarcerated at the Jasper County Jail, in violation of Plaintiff's Eighth Amendment rights. Doc. 1. Following the close of discovery, Defendants filed a motion for Summary Judgment. Because Plaintiff has failed to demonstrate any genuine dispute of material fact with regard to his claims and Defendants have shown that they are entitled to judgment as a matter of law, **IT IS RECOMMENDED** that Defendants' Motion (Doc. 28) be **GRANTED**.

## LEGAL STANDARD

In accordance with Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

1

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Cleotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

DISCUSSION

The evidence in the record of this case shows that there are no genuine issues of material fact regarding Plaintiff's claims that Jasper County law enforcement officers used excessive force against Plaintiff and failed to provide Plaintiff with medical care while Plaintiff was incarcerated at Jasper County Jail (the Jail) on June 17, 2009. Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* pleadings are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 525 (2006); Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Plaintiff's claims arise from three separate use of force incidents on June 17, 2009.[1] The incidents occurred after Plaintiff was brought to the Jail from Central State Hospital.[2] Pl. Deposition, p. 20 (Doc. 31). The first incident occurred immediately following Plaintiff's arrival at the Jail. Upon his arrival, Plaintiff's restraints were removed and he was placed on a metal bench in the booking area. Lowe Aff. (Doc. 29-1). Plaintiff was then ordered to go into the holding cell. Plaintiff refused to go into the cell because he thought he was supposed to go home. Pl.'s Dep., p. 20 (Doc. 31). After Plaintiff refused to comply with the officer's orders, Defendant White put Plaintiff in a headlock and attempted to force Plaintiff into the holding cell. While Defendant White had Plaintiff in a headlock, Defendant Lowe attempted to assist Defendant White. Plaintiff was hit and kicked by Defendants White and Lowe as they attempted to put Plaintiff into the holding cell. Pl.'s Dep, p. 21 (Doc. 31); White Aff. (Doc. 29-5). Defendants White and Lowe testified that Plaintiff was uncontrollable and violent during the incident, as Plaintiff attempted to bite, hit, and kick Defendants as they tried to move Plaintiff.

The second incident occurred only hours later when Defendants Vinson, McMichael, and Rhodes attempted to bring Plaintiff his food tray. Defendant Lowe informed Defendant Vinson that Plaintiff had been combative and violent earlier in the day and that Defendant Vinson should use caution when dealing with Plaintiff. Vinson Aff. (Doc. 29-4). When Defendants attempted to give Plaintiff his food tray, Plaintiff refused to accept the food tray or to comply with the

---

[1] Although Plaintiff's complaint does not specifically allege three separate incidents, Defendants' and Plaintiff's depositions indicate three separate incidents of force used against Plaintiff.
[2] It appears from the record that Plaintiff was ordered to Central State Hospital for psychiatric treatment. Plaintiff stated in his deposition that he had previously been found not guilty of cocaine charge, but had nonetheless been ordered to Central State Hospital because he "cussed out the judge." Pl.'s Dep., p. 37 (Doc. 31).

officers' orders. Vinson Aff. (Doc. 29-4); McMichael Aff. (Doc. 29-2); Pl. Dep., p. 22 (Doc. 31). After Plaintiff became compliant, Defendants entered the cell and gave Plaintiff his food tray.

While Defendants were inside Plaintiff's cell, they noticed that Plaintiff was still wearing his personal shoes instead of the required flip-flops. McMichael Aff. (Doc. 29-2); Pl. Dep., p. 23 (Doc. 31). Defendants ordered Plaintiff to remove his shoes, and Plaintiff again became upset and refused to comply with Defendant's orders because Plaintiff believed that he had permission to wear his shoes. Pl. Dep, p. 23, 44 (Doc. 31). Defendants then asked Plaintiff to stand up and turn around so that they could handcuff Plaintiff, but Plaintiff refused. Defendants testified that Plaintiff immediately bit Defendant McMichael's thumb when Defendant McMichael reached to grab Plaintiff's arm. Plaintiff denied that he bit McMichael, and testified that while Defendants were hitting him, McMichael "reached and hit me in my mouth that's when his thumb got snatched…and…I probably snagged [it]." Pl. Dep., pp. 47, 48 (Doc. 31). Defendants also testified that Plaintiff continued to attempt to bite, hit, and kick Defendants.

Defendants continued to hit and struggle with Plaintiff until they were able to handcuff Plaintiff. Plaintiff contends that after he was handcuffed, Defendants lifted him five feet off the floor and slammed him on the ground. Pl. Dep., p. 50 (Doc. 31). Plaintiff testified that his jaw, teeth, and lip were "busted," and that he is pretty sure that his jaw was broken. Pl. Dep., pp. 24, 59 (Doc. 31). When Defendants noticed that Plaintiff was bleeding, Defendant Rhodes put a mask on Plaintiff's face to prevent blood from getting on the floor, and Plaintiff was then taken to the hospital by paramedics. Plaintiff's medical records indicate that he was treated for a lip contusion and given Tylenol for his mouth pain. Def. Ex. A (Doc. 32). The records also indicate that Plaintiff had three loose teeth. Id. Plaintiff had his blood drawn and tested for blood-borne illnesses due to the fact that he had bitten Defendant McMichael. Plaintiff testified that

"Rhodes…said…[that] he ain't going to call no doctor" and stated that no one was to call a paramedic for Plaintiff. Pl. Dep., p. 51 (Doc. 31). Plaintiff also stated that the paramedics only drew his blood and that no one ever examined or treated his mouth injury.

The third incident occurred after Plaintiff returned from the hospital. Defendants Vinson and Rhodes went to Plaintiff's cell to give him a mattress. Plaintiff was not given a blanket or sheets because he had been combative earlier and because Jail officials believed that Plaintiff would harm himself.[3] Pl. Dep., p. 77 (Doc. 31); Vinson Aff. (Doc. 29-4). Plaintiff became upset again and told Defendants that he was going to tear up the mattress. Pl. Dep., p. 78 (Doc. 31). After Plaintiff refused to give Defendants the mattress, Defendant Rhodes sprayed pepper spray on Plaintiff to get him to release the mattress.[4] Plaintiff eventually released the mattress and was taken by Defendants to the decontamination room. Plaintiff testified that Defendants hit him in the head while they were placing handcuffs on Plaintiff and escorting him to the decontamination room. Because Plaintiff refused to get into the shower, Plaintiff was sprayed with a garden hose to remove the pepper spray. Plaintiff, who already had severe vision problems, stated that the pepper spray has made his vision more blurry.

As a result of these incidents, Plaintiff was charged with and convicted of obstruction of an officer. Pl. Dep., p. 29 (Doc. 31). Plaintiff, however, contends that he never hit, kicked, or otherwise assaulted Defendants. Plaintiff now alleges Defendants' use of force and failure to provide him with medical care have resulted in mouth injuries and weak vision.

---

[3] While previously incarcerated at the Jail in 2007, Plaintiff attempted to choke himself with a shirt. Pl. Dep., p. 96 (Doc. 31). Additionally, while incarcerated at the Jail in 2008, Plaintiff ripped open his mattress with his teeth and "slept inside the mattress" after Jail officials refused to give him blankets. Id. at p. 100.

[4] In Plaintiff's Complaint and in his first description of the incident in his deposition, Plaintiff only stated that he was sprayed with mace. Plaintiff, however, stated in his second description of the incident in his deposition that Rhodes emptied one can of mace in Plaintiff face and then pulled out a second can of mace and continued to spray Plaintiff.

1. <u>Excessive Force</u>

Plaintiff has failed to establish that Defendants used excessive force during the three incidents at the Jail. The use of force against an inmate is governed by the Eighth Amendment prohibition of cruel and unusual punishment.[5] To establish a claim of excessive force under the Eighth Amendment, an inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986). Courts evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting <u>Whitley</u>, 475 U.S. at 321). These five factors are:

(1) the extent of the injury;

(2) the need for application of force;

(3) the relationship between that need and the amount of force used;

(4) any efforts made to temper the severity of a forceful response; and

(5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

<u>Id.</u>

The evidence in record of this case indicates that Defendants' use of force against Plaintiff in all three incidents was a good faith attempt to restore discipline. The use of force against an inmate while trying to secure him or prevent harm to others "does not amount to cruel

---

[5] The record is unclear as to whether Plaintiff was a pre-trial detainee or a convicted prisoner while incarcerated at the Jail. Because "a claim of excessive force under the Fourteenth Amendment is analyzed as if it were an excessive-force claim under the Eighth Amendment," <u>Fennell v Gilstrap</u>, 559 F.3d 1212, 1216 n. 5 (11th Cir. 2009) (citing <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005), Plaintiff's claims are analyzed under the Eighth Amendment.

and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Campbell, 169 F.3d at 1372. Prison officers are given a wide range of deference acting to preserve discipline and security, and "guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007). Additionally, knowledge of a plaintiff's past violent confrontations with officers is "relevant to the assessment of the degree of force that a reasonable officer would have believed was necessary. Skrtich v. Thornton, 280 F.3d 1295, 1307, n. 7 (11th Cir. 2002).

In the first incident, Defendants' use of force was reasonable under the circumstances. Plaintiff was argumentative and refused to comply with Defendants' orders. There is nothing in the record to indicate that placing Plaintiff in a headlock and kicking him into the holding cell was done maliciously and sadistically. The Defendants testified in their affidavits that Plaintiff had been incarcerated at the Jail before and had a history of being combative and dangerous. According to Defendant Lowe, "[Plaintiff] is a very cocky, stout individual who is strong enough to yank a person off his feet. Plaintiff admitted in his deposition testimony to several previous incidents, including incidents where he flooded a cell, ripped open a mattress with his teeth, and smeared urine and feces on a cell wall. Pl. Dep. 96-102 (Doc. 31). Plaintiff denied, however, that he had had ever physically struggled with officers in any of these incidents. Id. I would not want to handle [Plaintiff] by myself." Moreover, Plaintiff does not allege any injury resulting from the first incident. Accordingly, Defendants did not violate Plaintiff's Eight Amendment rights when they forced Plaintiff into the holding cell.

Defendants' use of force was also reasonable under the circumstances during the second incident. Although Plaintiff contends that he was lifted five feet in the air and slammed on his head, the overwhelming evidence in the record contradicts Plaintiff's testimony. Plaintiff testified that he likely had a broken jaw and did not receive any medical treatment for his injuries. Plaintiff's medical records, however, show that he was examined immediately following the altercation and that he suffered only a lip contusion and three loose teeth. This injury is not consistent with the level of force described by Plaintiff, but rather is consistent with the level of force described by the Defendants.

The record shows that the amount of force employed in this second incident was reasonable in light of the need presented. It appears from the record that at the very least Plaintiff bit Defendant McMichael. Additionally, Defendants had personally had physical altercations with Plaintiff in the past where force was necessary. Further, Defendants' immediate attention to Plaintiff's injuries and the involvement of the paramedics is evidence that there was no malicious or sadistic intent. Accordingly, the Defendants use of force was reasonable and did not violate Plaintiff's Eight Amendment rights.

Defendants' use of pepper spray in the third incident did not amount to excessive force. Courts have held that even simple inmate disobedience, in the form of refusal of verbal orders, may justify the use of pepper spray. See Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008). In this case, Plaintiff refused to comply with Defendants' orders and threatened to destroy his mattress if Defendants attempted to take the mattress from him. Plaintiff admits that he had previously destroyed a mattress to protest the Jail's failure to provide him with a blanket. Pl. Dep., p. 100 (Doc. 31). Once Plaintiff was restrained, Defendants immediately took Plaintiff to be

decontaminated. This evidence shows that the use of pepper spray was not malicious or sadistic, and that Defendants did not violate Plaintiff's Eight Amendment rights.

The record indicates that the actions of each defendant were undertaken in their effort to obtain control of Plaintiff, defend themselves from assault by Plaintiff, and restore discipline in the facility. Construed in the light most favorable to Plaintiff, the evidence thus shows that there was a need for the use of force and that the amount of force used was reasonable in light of the threats presented by Plaintiff and the need to restore discipline.

2. Deliberate indifference to Plaintiff's medical needs

There is no evidence to show that Defendants were deliberately indifferent to Plaintiff's medical needs. The Eighth Amendment prohibits cruel and unusual punishment, including deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Campbell, 169 F.3d at 1363. With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

In this case, Plaintiff has failed to establish both the objective and subjective component. There is no evidence that Plaintiff was exposed to a substantial risk of serious harm or that Defendants disregarded a risk of serious harm. When Defendants realized that Plaintiff's mouth

was bleeding, they called paramedics to attend to Plaintiff. Plaintiff was then examined by the paramedics and transported to the hospital. Plaintiff's medical records show that Plaintiff was treated for a lip contusion, given pain medication, and discharged in stable condition. There is nothing in the record to show that any of the Defendants had authority to direct Plaintiff's medical care. Accordingly, Plaintiff has failed to show a genuine issue of material fact that Defendants were deliberately indifferent to Plaintiff's medical needs.

## CONCLUSION

Because the evidence in the record establishes that all force used by Defendants was reasonable and justified under the circumstances, and because Plaintiff failed to present evidence that Defendants were deliberately indifferent to Plaintiff's medical needs, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITIHIN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 16th day of February, 2012.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge